# CHARLESTON.

## STATE *ex rel.* E. L. GABBERT *et al* v. MACQUEEN, MAYOR ETC. *et al.*

### Submitted February 19, 1918.   Decided March 12, 1918.

1. MUNICIPAL CORPORATIONS—*Ordinance—Repeal—Special Election.*
     The charter of the city of Charleston considered and construed to confer on a specified percentage of the qualified voters who petition therefor the right to request the council to repeal an ordinance which theretofore the voters had approved, or submit to them at a special election to be called and held within the time required by the charter for their ratification or rejection an ordinance repealing a former one specified in the petition. (p. 45).

2. SAME—*Ordinance—Repeal.*
     An express inhibition against the power of the city council to amend or repeal an ordinance approved by the voters at such an election does not imply an intention also to inhibit the grant of the prayer of a petition in due form and signed by the required percentage of qualified voters to repeal such an ordinance or submit another ordinance repealing it to them for approval at an election called and held as so provided. (p. 45).

3. SAME—*Ordinance—Withdrawal—Amendment.*
     The charter of the city of Charleston, section 92, chapter 1, Acts 1915, permits the withdrawal of an ordinance proposed by the voters as therein prescribed, upon leave of the council, for amendment or additions to make corrections therein to comply with the requirements as to title; such title may be prefixed thereto and the ordinance as amended filed with the clerk without resubmitting it to the voters who signed the original petition, the presumption being that they desired the ordinance perfected so as to render it valid. (p. 47).

82 W. Va.

4.  SAME—*Ordinance—Withdrawal—"Amend."*

> The power to amend an ordinance ordinarily means more than the power to add names to a petition for the adoption thereof, though the words "amend" and "add to" are associated in a provision for the withdrawal of an ordinance to cure patent defects therein and for corrections as to alleged insufficiency.  (p. 47).

Original mandamus by the State, on relation of E. L. Gabbert and others, against George A. MacQueen, mayor of the city of Charleston, and others.

*Peremptory writ awarded.*

*H. W. Houston,* for petitioners.

*Thos. A. Bledsoe,* for respondents.

LYNCH, JUDGE:

By mandatory process relators seek to compel the mayor and members of the council of the city of Charleston to submit to the qualified voters of the city the ratification or rejection of an ordinance to repeal an earlier one passed by the council June 28, 1915, entitled: "An Ordinance Regulating the Operation of Motor Vehicles (commonly known as Jitney Busses) and Providing for the Issuance of Permits to Owners and Drivers Thereof." Amended and re-enacted pursuant to an election held April 16, 1917, in accordance with the terms and provisions and under the authority of the city charter, upon a submission to the qualified voters for ratification or rejection, the ordinance became and since has remained in force and effect as the law governing and controlling the operation of such vehicles within the city limits.

By a petition filed with the city clerk the required percentage of the qualified voters proposed to the council an ordinance repealing the former one and requested its enactment or submission to the voters at an election later to be held as provided by the charter. The committee to which it was referred for examination expressed in writing the opinion, based upon legal advice, that the proposed ordinance would not be valid if so passed or ratified since it did not have the requisite caption or title to conform with the requirements

of section 41. With knowledge of the alleged cause of invalidity, the petitioners through counsel representing them, and as the charter permits, asked leave to withdraw and amend the ordinance to supply the omission. Leave being granted and the ordinance amended, the petition and ordinance again were filed without presenting them again to the voters who had theretofore signed the petition and recommended the ordinance. The council on February 4, 1918 refused to enact or to submit it to the voters for ratification or rejection; the first, because, as argued, section 89 forbids the council to amend or repeal an ordinance adopted by the voters; and the second, because the ordinance as amended materially varied from the one whose enactment the petitioners desired. If each of these objections is valid and preclusive, the writ should be denied.

The charter grants to a proportional number of the qualified voters of the municipality the right to propose such legislation as they may deem necessary or advantageous, and vests in the council the discretionary power to determine whether it will enact into law the legislation so proposed or submit the same to the voters for their approval at a regular or special election called and held for the purpose. The council reached the proper conclusion when it decided that it could not amend or repeal an ordinance which had received the endorsement of the voters without resubmitting to them the proposal to amend or repeal for their ratification or rejection. Section 89 reads: "No ordinance or amendment to an ordinance adopted by the voters at any such election shall be repealed or amended by the city council." This provision denies to the council the usual right to amend and repeal *ex mere motu.* But there is no such limitation upon the power of the voters to require action by the council to submit the proposed ordinance to them for decision, so far as we can discover. On the contrary, the purpose seems to have been to confer upon them the right to propose an ordinance on any subject by them deemed vital or material to their general welfare without limitation or restriction as to time or extent, if they pursue the mode prescribed for presenting the legislation they demand. Though the charter

may forbid the council to repeal or amend an ordinance after its adoption by the electorate interested therein, yet if there be a necessity for transportation facilities readily accessible, whose owners are willing to serve the public, no satisfactory or sufficient reasons appear to forbid appropriate action in that behalf by the voters themselves in the manner authorized by the charter.

Next as to the right and effect of the withdrawal and substitution of the ordinance proposed after prefixing thereto the requisite title. Section 41 makes such a caption essential to validity. There was no change in the petition after it was withdrawn; no additions were made, no new signatures; it was not presented again to the voters who had signed it, and there is nothing tending to show alteration of their attitude towards the proposed civic legislation or the necessity therefor. Nor did the prefixed title in anywise affect what the voters requested the council to do. It merely removed the objection raised against the validity of the ordinance and made it conform with necessary requirements. The ordinance was the same in effect and had the same intent and object, the repeal of an ordinance to the continuance of which presumably such voters objected.

Besides, section 92 provides: ''In the event the petition shall be insufficient under the provisions of this act, it may be withdrawn by the person or persons named therein as representing the signers thereof and may within fifteen days thereafter be amended and added to and refiled as an original petition.'' Does this paragraph, as the respondents contend, relate only to the correctness of the signatures affixed to the petition and not to the ordinance, which necessarily is a part of and filed with it as an exhibit? It is the ordinance which the voters who signed the petition requested the council to enact or submit to the electors of the city for approval. The two seem to be connected and combined. Both are on the papers to which the signatures are appended. The petition requests the council to pass or submit the following ordinance embodied in it, and sets out its title and provisions.

The words ''added to'' in section 92, counsel contend, when considered and construed in connection with the context, im-

port additional signatures. There is some merit, it is true, in this argument. The context purports to provide a method for testing the number and qualifications of the voters who signed the petition. But the word "amend" is also significant. It means to correct the form of, to free from fault or error, as to amend a text or legal document or an appropriation bill; and such is its ordinary definition. The insufficiency contemplated by the act results from some departure from its provisions. It does not purport to limit or restrict the defect to want of signatures alone. No language is employed to express or imply an intent clearly or reasonably to confine amendments to additional signatures. Such petitions may be withdrawn and amended to conform with the provisions of the act; one only of the provisions relates to the number, names and addresses of the petitioners. Other names may be added of course, but the right to amend is general. If the legislature purposed to limit amendments to names only, it could readily and briefly have expressed that intention. Not having done so, we think it meant more than counsel seem disposed to grant. The relators are entitled to the relief they ask.

*Peremptory writ of mandamus awarded.*