# Staunton

NETTIE O. CHALLICE, ET ALS. V. WADE H. CLARK.

September 20, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and
Chinn, JJ.

The opinion states the case.

*John G. Challice,* for the appellants.

No appearance for the appellee.

EPES, J., delivered the opinion of the court.

This is a bill in chancery filed October 10, 1931, by Nettie O. Challice against Wade H. Clark. The most favorable view which can be taken of this bill from the standpoint of Mrs. Challice is this: It is a bill to remove from the eastern part of a parcel of land containing 2.09 acres, which was conveyed to Nettie O. Challice by Henry L. Francis, on September 20, 1926, the cloud of a grant dated January 25, 1928, made from the Commonwealth of Virginia to Wade H. Clark for seventeen acres of land, and to enjoin Clark from placing stakes along or erecting a fence along the line of his grant which crosses the 2.09 acre parcel claimed by Mrs. Challice.

On July 25, 1932, after all proceedings in this cause had been had, except the entry of the final decree, E. H. Brightwell, S. W. Snead, Harrel & Scott, and L. M. Epling, by leave of court, filed in this cause what they term a petition. In it they set forth that each of them has purchased a parcel of land upon which the grant of January 25, 1928, to Wade H. Clark is a cloud; and pray that they may be permitted to file this their petition in the suit filed by Nettie O. Challice, may have the same relief prayed by her, and also may have such general relief as they may be entitled to receive.

The final decree entered by the court on November 28, 1932, in effect, decreed that neither Mrs. Challice nor any of the parties complainant in the above mentioned petition had shown that they had a better right, legal or equitable, than Clark to the land in dispute, and refused any of the relief prayed for by them.

The petition for an appeal begins "Your petitioner, Nettie O. Challice, et als, respectfully represents that they are aggrieved" by this decree; but Nettie O. Challice is the only petitioner named in it. It concludes, "The court below committed error when it denied your petitioner relief. Its decree is manifestly wrong and should be reviewed and revised." It is signed "Nettie O. Challice, et als, by John G. Challice, attorney."

The petition is wholly insufficient as a petition for an appeal by any person other than Nettie O. Challice, and the appeal which has been granted is and must be treated as an appeal by her alone.

The answer of Clark need not be noticed further than to say this: It admits that at the time this bill was filed Nettie O. Challice was actually occupying a part of the land included within the boundaries of his grant; but it denies that she owns any part of the land embraced within the lines which he was engaged in staking out when stopped by the preliminary injunction granted in this cause. In his answer Clark asks that the court determine and establish the true line between the lands to which Nettie O. Challice has title and the lands to which he has title under his grant from the Commonwealth.

As best we can ascertain from the very unsatisfactory record which was made in the court below, or, at least, which has been certified up to us, the case made by the evidence is this:

In 1835, Jesse Goodwin "acquired by virtue of a treasury warrant" a tract of land containing thirty-four acres in what seems to be that part of Montgomery county which was cut off and annexed to Roanoke county by chapter 63, Acts 1848-49, p. 28. The survey made of this tract under and by virtue of this treasury warrant was made by James R. Kent, is dated May 11, 1835, and is recorded in the clerk's office of Montgomery county in Plat Boook F, p. 243.

The record does not show whether this survey was ever carried into grant by Goodwin or not; but from the evidence he would seem to have taken possession thereof and to have claimed title thereto.

In 1887, a partition was made of the lands of Jesse Goodwin, who had died. This partition was made in accordance with a plat and subdivision of the lands of Jesse Goodwin made by James E. Day, dated June 5, 1887, which is recorded in the clerk's office of Roanoke county

in Deed Book R, p. 321. Lots 5 and 6 of the lands of Jesse Goodwin as shown on this plat were laid off in whole or in part from the thirty-four-acre tract above mentioned; and their eastern line is the same line as that shown in the survey of James R. Kent (1835) as the eastern line of that tract. In the partition the land included in lots 5 and 6, which has come to be known as the Hemlock Dell tract, was partitioned to John W. Goodwin, and passed from him to John L. Goodwin, from whom it passed through mesne conveyances to Henry L. Francis. It was conveyed to Francis "about the first of the year 1926."

The conveyances by which the Hemlock Dell tract passed from John W. Goodwin to Francis were not introduced in evidence. But Francis testified that when he got his deed he compared it with the recorded copy of the plat of Jesse Goodwin's land made by Day in 1887 and that survey "tallied with our deed."

Some time in 1926, after he had acquired the Hemlock Dell tract, Francis employed Mr. George M. Hutchinson, a consulting engineer, to run the lines of that tract. This he did in accordance with the Day survey of 1887 as he then understood it and as he best could locate its calls on the ground. At that time, however, he did not know of the existence of the Kent survey of 1835.

When Hutchinson was making his survey, Wade H. Clark was present and claimed to own the land to the east of the Hemlock Dell tract. He objected to the location of the eastern line of that tract as Hutchinson was running it. Hutchinson asked Clark to produce his deed to the adjoining land "that the two descriptions might be compared, and differences, if any, reconciled." Clark failed to produce his deed. Hutchinson says he thereupon went to the clerk's office of Roanoke county and searched for, but could not find a deed to Clark which he could identify "as being adjacent to the easterly boundary line of the Francis property."

The tract of land on which Clark's residence stands is

bounded by the northern portion of the eastern line of the Hemlock Dell tract. Just south of this Clark tract lies the triangular parcel of land containing seventeen acres for which Clark in 1928 procured a patent from the Commonwealth. Mrs. Challice contends that the line of this triangular parcel which is called for as extending from its northern apex S. 12 degrees W. 117.6 poles runs through the Hemlock Dell tract and through the part thereof she purchased from Francis.

As early as August 19, 1925, Clark had taken steps looking to procuring a grant from the Commonwealth for this seventeen acres as waste and unappropriated land. On or about July 28, 1926, Land Office Treasury Warrant No. 32,376 was issued to him authorizing him to locate and make entry upon twenty acres of waste and unappropriated land; and under this warrant he made entry on May 1, 1927, upon the seventeen acres of land hereinafter mentioned as being granted to him.

Accepting the line run by Hutchinson as the eastern line of his Hemlock Dell tract, Francis divided the land lying just to the west of that line into lots. One of these containing 2.09 acres he sold to Mrs. Nettie O. Challice on September 20, 1926, and executed a deed therefor to her which she had recorded a few days after she received it. Strange to say this deed was not introduced in evidence, nor does the record anywhere show the date thereof or give a description of the land conveyed therein. But for the purpose of this case we assume that the deed was executed and delivered on September 20, 1926. From evidence found here and there in the record and pieced together, it may be inferred that this deed conveys a 2.09 acre parcel of land fronting on the county road, running back east, approximately 400 feet, to the line run by Hutchinson as the east line of the Hemlock Dell tract, and that a branch, designated as Goodwin's branch, running approximately north and south and about 150 feet west of the county road, flows through it.

Nettie O. Challice has paid taxes on the 2.09 acres conveyed to her by Francis for 1927 and succeeding years; and she testifies that "after purchasing" this parcel of land "I built the house [cabin] there and put a bridge across the creek and cleaned up the place." But there is nothing in her testimony to show how soon after she purchased the land she did this.

In reply to the question, "Have you been in quiet and peaceable possession of that land since you bought it September 20, 1926?" she replied, "I have, with the exception of what is going on now." But there is nothing in the record which shows that Mrs. Challice did any act to show that she was in actual possession or occupancy of the 2.09 acre parcel until she cleaned up the place and built the cabin. And there is no evidence which can be said to prove that, prior to the time Clark located his warrant on the land which was subsequently granted to him and had the survey thereof made on June 1, 1927, she had done any act which evidenced the actual possession and occupancy thereof by her. Perhaps there is sufficient evidence to warrant an inference that she had built her cabin before the grant to Clark was issued.

By grant dated January 28, 1928, the Commonwealth granted to Wade H. Clark the triangular parcel of land upon which he had made entry describing it as follows: " * * * a certain tract * * * containing seventeen (17) acres, lying * * * in the county of Roanoke, near the north basis of Poor Mountain, on the south side of Roanoke river, and bounded as follows, to-wit:

"Beginning at 'A,' two chestnut oaks and one white oak called for now gone in a flat corner to land formerly owned by John L. Goodwin; thence south 12° west 117.6 poles to a point 8 feet west of four maples in one stump; thence across the ridge south 62° east 52 poles to corner of J. L. Goodwin and J. B. Munsey line, and with Munsey line north 9° 45' west 131.4 poles to the beginning * * *."

Henry L. Francis also conveyed to several other per-

sons lots whose eastern boundaries were the line run by Hutchinson as the eastern line of the Hemlock Dell tract. When Clark found that Nettie O. Challice and these other persons were claiming that the land granted to Clark overlapped the land conveyed to them by Francis, he employed D. R. Carpenter, a civil engineer, to locate the eastern line of the Hemlock Dell tract. By this time (August, 1931) the records in Montgomery county had been examined, and the plat and survey made by Kent in 1835 had been found. Working from this plat and survey and the plat and survey made by James E. Day in 1887, Carpenter ascertained that the eastern lines of the two surveys were the same line, and was able to and did find on the ground and identify definitely several of the original monuments called for along this line by both surveys.

As located by Carpenter, the southern end of the eastern line of the Hemlock Dell tract, as called for in the muniments of title of Henry L. Francis, lies several hundred feet west of the southern end of the line run by Hutchinson in 1926, as the eastern line of that tract. Hutchinson's line runs east of the branch and approximately 325 feet east of Mrs. Challice's cabin. Carpenter's line runs west of the branch and between twenty-five and fifty feet east of her cabin.

There is no evidence in the record to show that Francis or any of his predecessors in title were at any time in actual possession of, had settled upon, or been in the actual occupancy of any part of the land lying between the line run by Carpenter and the line run by Hutchinson, or had any color of title thereto, unless the eastern line of the Kent (1835) survey (which is the same as that of the Day [1887] survey), runs further east than the line which Carpenter determined to be and located as the eastern line of the Hemlock Dell tract.

Some idea of the nature of the land lying between the Hutchinson and Carpenter lines is furnished by Mrs. Chal-

lice in her testimony. She was asked whether Francis had any fences along the Hutchinson line when he pointed out to her the eastern line of the land she was purchasing from him. She replied, "No, sir. There has never been a fence there, because it was up and down hill so that you could hardly put a fence on it. It is just a gully that runs in the back of the house," *i. e.*, her cabin.

Clark testified that his only claim to the land claimed by Mrs. Challice is under his grant from the Commonwealth; and that he did not give Mrs. Challice or any other person notice in writing of his intention to locate his treasury warrant on the land granted to him by the Commonwealth or of his intention to apply for a grant therefor. He says he did not know, and does not now know, that any person was in possession of any part of it at the time he made his entry thereon, had it surveyed, or acquired his grant therefor.

The record does not affirmatively show that Mrs. Challice made in the trial court all the contentions which she makes here; but we assume that she did. The contentions she makes here are as follows:

(1) She contends that the grant to Clark is invalid because he has "failed to offer any evidence of strict compliance with the statute," and particularly because he has offered no evidence that he had the land "surveyed and that survey certified to and recorded as required by statute."

(2) She contends that the grant is invalid because Clark failed to give notice in writing to Mrs. Challice, or to any other of the persons claiming to be in the possession and occupancy of parts of the land included in his grant, or to the persons owning land adjacent to the land described in his grant, of his intention to locate his warrant on this land or his intention to apply for a grant thereof. This contention is based upon sections 428-430, Code Va. 1919.

(3) She contends that the grant is void as to the lands claimed by her which are included therein, because this land had "been settled continuously for five years previously" (*i. e.*, five years previous to the location of Clark's warrant thereon) by her and her predecessors in title, and taxes thereon had been paid during that time by them. This contention she rests on section 457, Code Va. 1919.

(4) She contends that the evidence shows that the patent was procured by fraud. The gist of this contention is this: Section 459, Code Va. 1919, provides that a grant shall not issue for any land, "unless there be indorsed on such survey an affidavit of the person applying for the grant, as well as that of the surveyor making the survey, that they verily believe that the land embraced in the survey has not been previously appropriated, or that it was, at the time of the entry thereof, liable to entry, or that such person has bona fide title or claim to such land, and desires by a new grant to perfect or quiet his title or claim thereto." Sections 428-430 require one desiring to locate or who has located a warrant upon land which is in the actual possession of any person under color of title to give notice thereof in writing to such person. Sections 426 and 432-439 require that a survey shall be made of the land entered upon under a warrant and a plat thereof, together with the certificate of the surveyor recorded in the clerk's office within three months after the survey is made. The recordation of the deed from Francis to Mrs. Challice "put him [Clark] on notice" that Mrs. Challice was in possession of the land being claimed by her; and the evidence shows that "he was bound to have known the land he proposed to seek title to by a land grant was not barren land and that the State of Virginia had no title to it." Therefore "he necessarily had to represent as true facts he knew were not true to obtain the same, that is to say that the land was waste land, that he had given those in posses-

sion notice, that he had a survey made and recorded, etc., none of which acts required by statute to be done were done." Such misrepresentations constitute a fraudulent procurement of the grant.

Upon consideration of the evidence the trial court reached the conclusion that the right of Mrs. Challice to the relief prayed by her turned upon the location of the eastern boundary line of the Hemlock Dell tract. By its order of April 4, 1932, after reciting, in effect, that this was its opinion, it appointed George W. Hutchinson (who had made the survey for Francis in 1926), D. R. Carpenter (who had made the survey for Clark in 1931), and C. B. Malcolm (another civil engineer) special commissioners for the purpose, and directed them to "make a true and accurate survey of so much of said properties as is necessary to determine and fix the correct boundary line in dispute, and report their findings in writing "to the court, with a plat annexed. The order also specifically required that "should the said commissioners not arrive at a unanimous conclusion the one dissenting shall file a separate report, with plat and full explanation attached."

The commissioners met on the ground and made such surveys as they deemed necessary. On June 2, 1932, they filed a *unanimous* report, in which they report that the line run by Hutchinson in 1926 is not the true eastern line of the Hemlock Dell tract, and that the true eastern line of that tract (that is of lots 5 and 6 of the partition of the lands of Jesse Goodwin) is a line which they describe as follows:

"Beginning at a point on the east bank of what is known as Goodwin's Branch, about 100 feet west of the county road, about 200 feet from the recent residence of Wade H. Clark, and six feet west of a large walnut tree, which is marked with three old chops, and running thence S. 11° 10′ W.—1909.6 feet to a stake, thence S. 14° 10′ W. —2648.5 feet to a large poplar tree standing at the

water's edge on the east side of the said branch, and marked by three old chops. Declination 1° 55′ W. 1932."

They further report that their location of this line "is not dependent upon interpretation of magnetic bearings or measurements of distances, although both the bearings and distances involved check within the limits of accuracy to be expected, but is dependent entirely upon the identification of old landmarks." The report also gives in detail the landmarks called for in the surveys of 1835 and 1887 which they identified and explains how they identified them.

The line reported by the commissioners as the true eastern line of the Hemlock Dell tract seems to be the same line, or certainly approximately the same line, that Carpenter in 1931 had determined to be the true line.

On November 28, 1932, the court entered its decree confirming this report, and adjudging and decreeing that the line reported by the commissioners is the true line between the land granted by the Commonwealth to Wade H. Clark and the lands of the complainants; that "Wade H. Clark shall have and possess the said tract of land granted to him by the Commonwealth of Virginia free from further interference and all claim as to right, title or interest asserted by the complainants, or any of them," and that the injunction theretofore granted be dissolved.

We are of opinion that the court did not err in so decreeing.

When the Commonwealth has issued its grant to a grantee, it is presumed in the absence of evidence to the contrary, that the grantee has complied with all the steps required by the statute for the procurement thereof. The burden rests upon the person attacking the validity of the grant to prove that it was not validly procured. The record contains no evidence which tends to prove that Clark failed to comply with any step required or to do any act which the statutes required a person to take

or do to procure a grant for waste and unappropriated land.

Mrs. Challice's second contention which is based on the provisions of sections 428-430, Code Va. 1919, is not well made. She misconstrues these sections. Their effect is this: If a person desiring to locate a warrant upon lands subject to entry which are in the possession of another, claiming the same under written color of title, gives the person in possession written notice of his intention to locate a warrant thereon, the person in possession must locate a warrant thereon and file his caveat within three months, if he desires to prevent the issuing of a grant to the person so giving notice. But if the person not in possession fails to give to the person so in possession such notice, the latter may, at any time before a grant issues to the former, locate a warrant on such land and file a caveat to prevent the issuing of a grant to the former. Section 430 also gives the person giving such a notice certain rights as against persons other than the person in possession. But these sections do not expressly or impliedly require the giving of notice to the person in possession of lands subject to entry as a prerequisite to the procuring of a grant therefor.

There is no statute now in force to which our attention has been called which requires that a person desiring to procure a grant for lands subject to entry shall give notice thereof to persons owning the adjacent lands.

Her third contention, i. e., that the grant to Clark is invalid in so far as the land claimed by her is concerned because of the provisions of section 457, falls because it is not supported by the evidence. The pertinent part of section 457 reads: "No location of any land office warrant upon any land which shall have been settled continuously for five years previously, upon which taxes shall have been paid at any time within said five years by the person having settled the same, or any one claiming under him, shall be valid; and any title which the Common-

wealth may have to such land shall be hereby relinquished to the person in possession of the said land and payment to the extent of the boundary line enclosing the same."

Certainly the great weight of the evidence is to the effect that the eastern line of the Hemlock Dell tract is the line fixed by the decree of the court here appealed from. If this be the true eastern line of the Hemlock Dell tract, and we are of opinion that the court has correctly determined this question, the evidence is wholly insufficient to show that any person under whom Mrs. Challice claims has ever had any color of title to any of the land lying east of that line, or that any person under whom she claims has ever settled or been in actual possession of any of the land included in Clark's grant which lies east of that line.

Though it is not so proven, if it be assumed that Mrs. Challice settled upon and entered into the actual possession and occupancy of the 2.09 acre parcel of land conveyed to her by Francis on the day she received her deed (September 20, 1926), her settlement had not continued for five years previous to the entry or location of his warrant thereon by Clark which was made on May 1, 1927.

The evidence fails to show any settlement of this land continuously for five years previous to May 1, 1927, by any person; nor does it show that the land granted to Clark had ever been granted by the Commonwealth to any person.

From what has been said above it necessarily follows that her contention that the evidence shows that Clark procured his grant by fraud is not supported by the record.

The decree appealed from will be affirmed, with costs to the appellee. But as the appellee has not appeared by counsel in this court (he made no appearance), he will not be allowed any attorney's fee.

*Affirmed.*