CHARLES F. BACHMANN, *et al.* v. RUSSELL B. GOODWIN, *et al.*

(CC 611)

Submitted May 3, 1939. Decided June 13, 1939.

*A. E. Bryant* and *Fred H. Brinkman,* for petitioners.
*Jay T. McCamic* and *C. Lee Spillers,* for respondents.

Fox, PRESIDENT:

On the 27th day of December, 1937, the council of the City of Wheeling, acting under Chapter 93, Acts of the Legislature, 2d Ex. Session, 1933, adopted a resolution by which it made a finding that sub-standard conditions, with respect to housing, existed in the city, and created what was termed the Wheeling Housing Authority, and thereafter the mayor of the city named five citizens of said city as members of such authority. On the 27th day of December, 1938, the council adopted an ordinance by which it recognized the tax exempt character of Wheeling Housing Authority, agreed to continue the usual municipal services to said housing authority, and approved a form of contract with said authority and authorized the execution of the same by the mayor. It will be observed that the resolution and ordinance were necessary to create in the housing authority power to contract with the city and the Federal Government in relation to the funds necessary to carry out any proposed improvements in housing conditions. On the 13th day of January, 1939, a contract was entered into between the Wheeling Housing Authority and the City of Wheeling, as authorized by the ordinance of December 27, 1938, providing for the construction of housing in the city. On the 28th day of February, 1939, a proposed ordinance, repealing the ordinance of December 27, 1938, was presented to the council of the city by petition signed by more than one thousand electors of said city, after having been first filed with the city clerk and approved by him as to form. The prayer of the petition was that the proposed repeal ordinance be adopted without alteration, within twenty days after the attachment of the clerk's certificate as to its sufficiency, or, if not so adopted, that the same be submitted to a vote of the people in accordance with the pro-

visions of Section 11, Part I of the charter of the City of Wheeling, Chapter 141, Acts of the Legislature, Regular Session, 1935. The council refused either to adopt the ordinance or to submit it to a vote, and the petitioners in this proceeding sought, by mandamus, in the circuit court of Ohio County, to compel the council to submit the proposed ordinance to a vote of the people at a general election to be held in the said city on the 25th day of May, 1939. Section 11, above mentioned, provides for a special election unless a general municipal election is to be held within ninety days from the date of the clerk's certificate approving the petition, and it is conceded that if it is proper to so submit the proposed ordinance, the same should be done at the general municipal election.

Upon the filing of the petition for mandamus, respondents tendered their answer thereto, which was filed, and to which the petitioners interposed their demurrer. Upon consideration of the demurrer, the trial court sustained the same, and certified the questions arising upon its ruling to this Court.

The question presented is a narrow one, and, as we see it, involves only the construction of Section 11, Part I of the Wheeling charter. That section provides that "Any proposed ordinance may be submitted to the council by petition, signed by one thousand electors of the city", and then provisions follow as to how the petition shall be filed, the alternatives of the council, when the election shall be held, if the ordinance is not adopted by the council, and the effect thereof. Respondents rely upon section 10, Part I of the charter to sustain their contention that the proposed vote cannot be had under Section 11, under the rule of *expressio unius est exclusio alterius.* This section provides that no ordinance, resolution or action of the council in certain particular matters, such as changing precinct boundaries, re-districting the city, annexing territory, or granting any privileges, rights, license, easements or franchises to public utilities shall go into effect before the expiration of thirty days from the date of its passage and requires publication thereof. The

section further provides that upon the filing of a petition, within such period of thirty days, signed by one thousand electors protesting the passage of such ordinance, resolution or action, the council shall reconsider the same, and if not entirely repealed, it shall be submitted to a vote of the electors for their approval. We are unable to see that this section has any important bearing upon Section 11. Section 10 is a limitation upon the power of the council to adopt certain specified ordinances without providing for a delay period in which electors may require its reconsideration and submission to a vote of the people; while Section 11 broadly states that any ordinance may be submitted to the council by petition, and, if not adopted as offered, a vote thereon may be had. The powers conferred upon the Wheeling Housing Authority to contract with the city where so conferred by an ordinance, and it is difficult to comprehend why the voters of the city may not have the right to initiate a repeal of such ordinance by filing a petition with the council, under the charter provision. The matter of whether or not the Housing Authority shall exist in the City of Wheeling is one of broad public policy upon which the voters ought to have a right to speak, within the provisions of any ordinance which permits them to do so, and they should not be deprived of that right except upon a clear showing that the charter was not intended to confer the same. It may be conceded that the broad powers conferred upon the people by Section 11 with respect to the submission of ordinances by petition may lead, in some instances, to its employment in matters of less importance than is here presented; but the granting of power is a legislative function with which this Court will not undertake to interfere, and if, in the interest of good government, the charter provision requires limitation, the methods provided by the legislature, by which amendments may be made, should be resorted to.

Without determining whether Section 11 was intended to cover legislative action of the council rather than its administrative functions, we are of the opinion that the

resolution and ordinance under which the housing authority of the City of Wheeling proposes to act, are legislative in their character rather than administrative. That the council of the City of Wheeling has legislative power clearly appears from Section 3, Part I, of its charter, and we can conceive of no more solid basis for the exercise of legislative authority by the council than a matter of such public importance as the creation of a public housing authority in the city. It necessarily follows that if the ordinances establishing the authority and authorizing it to act are legislative in their character, an ordinance seeking the repeal of the authority is likewise legislative, and for this reason, the point raised that Section 11 may be used in trivial matters, if that were an argument proper to be considered, does not apply to the present situation.

We think the cases of *State, etc.* v. *McQueen,* 82 W. Va. 44, 95 S. E. 666, and *State, etc.* v. *Charleston,* 92 W. Va. 61, 114 S. E. 382, are strongly persuasive of the power of the people to compel a vote under the ordinance here being considered. In the case last cited, it is held that the fact that the ordinance, if adopted, might be invalid in certain respects, if attacked, is not a sufficient basis upon which to refuse a referendum. We are not passing upon what would be the effect of the repeal of the ordinance of December 27, 1938. That question is not now before us and may never be presented. We are dealing with the sole and only question of the right of the petitioners to have submitted to a vote an ordinance repealing the housing authority ordinance of December 27, 1938. Being of the opinion that the petitioners are entitled to such an election, the ruling of the circuit court sustaining the demurrer to the answer of the respondents is affirmed.

*Affirmed.*

KENNA, JUDGE, dissenting:

The majority opinion makes possible repetitious referendums in a manner and involving questions not contemplated by the charter of the City of Wheeling. Undoubt-

edly the charter provisions contemplate that the voters, following the prescribed routine, may assume the legislative initiative in the manner set out in section eleven of the city charter. I find no provision that valid ordinances passed by the city council may be repealed in like manner. Of course, if this were so, the city council's legislative function would be limited to passing ordinances having only "permissive validity", and the stability of legislation would be undermined to the extent that the contracts, improvements and general development, including the social structure, of our municipalities would have no foundation. It is unnecessary to refer to the opportunity for fraud, corruption, blackmail and excessive cost developments that it seems to me obvious would be unavoidable.

Section ten of the charter requires that enactments changing precinct boundaries or otherwise re-districting the city, annexing territory or granting a utility franchise, except when otherwise required by the general laws of the state, shall not go into effect before thirty days from the time of their final passage and not then unless published within two days after passage in two newspapers circulated in the city. The same section further provides that if within the thirty-day period, a petition of protest against the passage of such an ordinance signed by one thousand electors of the city is filed or presented to the council, thereupon it shall be the duty of the council to reconsider it, and if not entirely repealed submit it to a referendum in the manner provided. This is the only section of the charter providing for the repeal of any action of the city council, and it does not include ordinances of the kind under consideration.

Section eleven of the city charter specifies certain kinds of ordinances which shall be submitted to a referendum upon the affirmative petition of one thousand electors. This section is applicable only to the affirmative action of the city council, or if this does not follow, the presentation of the petition provides for the affirmative action

of the electors. It contains no other provision and bears no relation to the repeal of existing ordinances.

The ordinance under consideration was passed by the city council of Wheeling on the twenty-seventh day of December, 1938, and contained provisions authorizing the mayor to enter into a contract with the Wheeling Housing Authority. This was done by the mayor on the thirteenth day of January, 1939, and on February the tenth a petition was filed requesting the city council to repeal the ordinance under the provisions of which the contract was entered into, or if they declined to do so, to submit that question to a referendum. The council having declined to comply with the petition, the Circuit Court of Ohio County awarded a writ of mandamus requiring him so to do, and it is from that order that this review was granted.

I do not think that there is any question but that referendum is confined excusively to legislative matters, and that it does not in any way control administrative matters. If the rule laid down by the majority opinion does not result in the electors of the City of Wheeling having direct control over the administrative functions of their city government, it will be because they have neglected an obvious opportunity.

The charter of the City of Wheeling vests all legislative power in the city council, subject to the terms of the charter and the constitution. This, of course, means that in so far as the initiative and referendum are concerned, the power of the city council, unless clearly subjected to conditions, is to be taken as unimpaired. Section ten of the charter deals with the questions which may be involved and submitted to a referendum. Section eleven deals with those questions concerning which, upon the petition of one thousand electors, the initiative may be assumed by the qualified voters of the city. This section relates to all proposed ordinances; not to the repeal of an ordinance, as here.

I do not think that either section ten or section eleven of the city charter is intended to provide for the repeal

of an ordinance passed by the city council more than one year prior to the time the petition for its repeal is presented to that body.

As a usual thing, a referendum does not extend to the administrative functions of a city council. Note, Ann. Cas. 1916B, page 820. And in order that a charter provision shall be so construed, the legislative purpose should be distinctly and clearly expressed. 19 R. C. L., page 909 and page 746. To so construe section eleven of the city charter would be dangerously near setting up a device which could be used for impairing the obligation of contracts entered into under city ordinances thereby made subject to repeal by popular vote, and that class of ordinances, as well as every other class, would be a constant target and a constant expense to the city, provided that as many as one thousand electors wished to protest an unlimited number of times during an infinite period of time. The number of electors in the City of Wheeling is roughly estimated at twenty thousand, therefore, I am impressed that under the majority's view five per cent of that city's voting population will be enabled to keep Wheeling in constant turmoil.

There are other relevant legal questions, such as rules of statutory construction, that I would like very much to discuss. However, my only purpose is to clarify the fundamental reason for my disagreement with the majority holding, and, with all deference, I hope a lengthy paper is not required for that purpose.