CITY OF HUNTINGTON

*v.*

OSCAR SALYER

(No. 10311)

Submitted January 23, 1951.    Decided February 13, 1951.

*Ned O. Heinish,* for plaintiff in error.

*H. L. Ducker,* City Attorney, and *Paul W. McCreight,* for defendant in error.

LOVINS, JUDGE:

Oscar Salyer was arrested by a police officer of the City of Huntington on August 3, 1949, and taken to the City Building where he deposited the sum of twelve dollars for his appearance in the police court of that city. Subsequently he was tried in the police court, found guilty of obstructing a sidewalk, and sentenced to pay a fine of ten dollars and costs. He appealed from that conviction to the Common Pleas Court of Cabell County, West Virginia, where he was tried *de novo* by a jury, found guilty "as charged in the within warant" and sentenced to pay a fine of ten dollars and costs. He appealed to the Circuit Court of Cabell County for a writ of error, which was denied, and thereafter he was granted a writ of error by this Court.

The evidence shows that Salyer, together with twelve or more young men or boys, forgathered in front of

Kaelin's Restaurant, which is situate on the west side of Ninth Street between Fourth Avenue and Four and One-Half Alley in the City of Huntington; that complaints had been made previously by the proprietor of the restaurant on account of the gathering of such persons; and that Salyer, among others, had been warned to refrain from such practice. The evidence tended to show that Salyer had been seen on the sidewalk in the vicinity of the restaurant a number of times previous to his arrest. The sidewalk in front of the restaurant is approximately eight feet in width. On the occasion when Salyer was arrested approximately three feet of such sidewalk was unobstructed.

When the police officers appeared, a number of the people in the group fled, but Salyer and three other persons were arrested.

At the trial in the common pleas court the City of Huntington was permitted to show that complaints had been made about "disorderly boys loitering in front of" the restaurant. The witness did not testify that Salyer was one of the disorderly boys about whom complaints had been made.

Witnesses were permitted to testify with reference to the acts of persons who were on the sidewalk with Salyer on the occasion of his arrest as well as the conduct of other persons on previous occasions.

It is uncontradicted that Salyer is a person of good reputation, that he is regularly employed by the Chesapeake and Ohio Railway Company as a blacksmith welder, and that he had attended the public schools in the City of Huntington.

The defendant gives his version of the events preceding his arrest as follows: He came to the vicinity of Kaelin's Restaurant in his automobile, parked the same and then purchased a package of cigarettes, that thereafter he met an acquaintance and talked with him for five minutes, and that as he walked away he was arrested.

The complaint on which the warrant was issued states that the defendant "did unlawfully loiter and frequent in and on the sidewalk on the west side of Ninth Street between Fourth Avenue and Four and one-half Alley of said City, then and there a public street of and public place in said city to the obstruction of traffic, and did thereby commit vagrancy * * *." The pertinent portion of the warrant charges that defendant on August 3, 1949, in the City of Huntington "did unlawfully, and within one year next prior to the issuance of this warrant, loiter and frequent in and on the sidewalk on the west side of Ninth Street between Fourth Avenue and Four and one-half Alley, then and there a public place in the said City, to the obstruction of traffic, and did thereby commit *a vagrancy* within the corporate limits of the said City, in violation of the ordinance of the said City in such cases made and provided * * *." (Italics supplied.) It will be observed that the foregoing warrant charges the defendant with unlawfully loitering and frequenting the street, the effect of which was to obstruct traffic, and that the defendant thereby committed the crime of vagrancy. The transcript of the proceedings in the police court discloses that Salyer was found guilty of obstructing a sidewalk. A remark made by the judge of the common pleas court shows that defendant was tried in that court for the same offense.

Essentially the defendant was charged with committing the crime of vagrancy. His alleged acts in loitering on the sidewalk and obstructing the same, as the warrant is phrased, constitute elements of the substantive crime charged, to-wit: vagrancy.

We consider one question as being presented by this record: Are the ordinance and warrant herein considered valid?

The ordinance of the City of Huntington was not proved nor shown in the record. But since this case originated in the police court that court could take judicial notice of the ordinance without allegation and proof. *Wheeling* v. *Black, et als.,* 25 W. Va. 266, 281; *Moundsville* v. *Velton,*

35 W. Va. 217, 13 S. E. 373. Such is the general rule. See Annotation, 111 A. L. R. 959. The Common Pleas and Circuit Courts of Cabell County, as well as this Court, may also take judicial notice of such ordinance. *Moundsville* v. *Velton, supra.* The pertinent portion of the ordinance of the City of Huntington under which the warrant was issued and defendant prosecuted read as follows: "It shall be unlawful for any person to commit vagrancy within the corporate limits of the City of Huntington. The following persons shall be deemed vagrants, to-wit: * * * any person who loiters or frequents in or on any street, alley or other public place to the obstruction of traffic."

The charter of the City of Huntington gives the common council of that city, among many others not here pertinent, the power: to control and regulate the use of the streets and alleys in the city; to restrain and punish vagrants, mendicants, beggars, tramps, prostitutes, drunken or disorderly persons, and the power to provide for their arrest and manner of punishment; to promote the general welfare of the city; to protect the persons and property of the citizens therein; to preserve and protect the peace, order, safety and health of the city and its inhabitants; to prescribe and enforce ordinances and rules for the purposes of protecting "the health, property, lives, decency, morality and good order of the city and its inhabitants"; to carry into effect the powers conferred upon the city by the charter and other acts of the legislature by adopting and enforcing orders, rules and ordinances not contrary to the laws and constitution of the State of West Virginia. Section 6, Chapter 161, Acts of the Legislature, Second Extraordinary Session, 1933. The power granted to the City of Huntington to adopt ordinances is conditioned upon such ordinances being consistent with the laws of the State of West Virginia. Code, 2-2-10, sub-paragraph (v). See I Cooley's Constitutional Limitations, Eighth Ed., page 413.

We now come to the inquiry as to what the law of the State of West Virginia is with reference to the crime of vagrancy.

"Such parts of the common law, and of the laws of this State as are in force when this article goes into operation, and are not repugnant thereto, shall be and continue the law of the State until altered or repealed by the Legislature. \* \* \*" Article VIII, Section 21, Constitution of West Virginia. See Code, 2-1-1. Since there is no legislative enactment relative thereto, the crime of vagrancy remains as at common law. This Court has defined common law vagrancy as follows: "At the common law vagrancy consists in going about from place to place by a person without visible means of support, who is idle, and who, though able to work for his or her maintenance, refuses to do so, but lives without labor or on the charity of others." *Ex Parte Hudgins*, 86 W. Va. 526, 529, 103 S. E. 327. We do not find where this Court has considered the common law crime of vagrancy in any other case, but we find definitions of vagrancy in texts and judicial decisions. The crime of vagrancy is discussed in 2 Blackstone's Commentaries, pages 169-170 (2 Chitty's Blackstone 128). See 2 Sharwood's Blackstone's Commentaries, page 168; 55 Am. Jur., Vagrancy, Sec. 1; 43 Words and Phrases, page 642, et seq.; Annotation, 14 A. L. R., page 1482.

The common law definition of vagrancy is not important in many jurisdictions since statutes have been enacted defining vagrancy, and, in many instances, vagrancy or idleness is coupled with other substantive offenses. See Annotation, 111 A. L. R. 68. But in this jurisdiction, we reiterate, no such statute has been enacted.

A question somewhat related to the crime of vagrancy arises on city ordinances regulating the use of streets. It has been held that conviction under an ordinance which prohibited a person from lounging, standing, or loafing around street corners or other public places was unconstitutional as infringing upon the right of personal liberty, and as being unreasonable and oppressive so long as a person charged with violating that ordinance conducted himself properly and did not interfere with the use of the street. *City of St. Louis* v. *Gloner* (Mo.), 109 S. W. 30. A

statute which prohibited any person from habitually loafing or loitering on the street, highway, or any public place was held invalid in the case of *Territory of Hawaii* v. *Anduha,* (9th C. C. A.) 48 Fed. 2d 171. In other cases ordinances prohibiting acts similar to unreasonable loitering on a public street have been held invalid on the ground that they were indefinite and uncertain. See *Commonwealth* v. *Carpenter* (Mass.), 91 N. E. 2d 666; *Winters* v. *New York,* 333 U. S. 507; *Lanzetta* v. *New Jersey,* 306 U. S. 451; *State* v. *Hunter* (N. C.), 11 S. E. 366. A municipal ordinance similar to that considered in *State* v. *Hunter, supra,* was upheld in the case of *City of Portland* v. *Goodwin* (Ore.), 210 P. 2d 577.

With the well established principle in view that ordinances must be consistent with the law of this state, we reach the conclusion that the ordinance here considered does not meet that requirement. The City of Huntington, by such ordinance, included an element in the crime of vagrancy not embraced within such crime as defined by common law, which is now the law of this State. Obstructing a street is not an element of vagrancy at common law. Such ordinance being inconsistent, the Council of the City of Huntington did not have the power to adopt the ordinance in its present form.

It is not necessary to determine the constitutionality of the ordinance here considered, nor do we express any opinion on that question. The invalidity of the ordinance rests upon its inconsistency with the law of this State.

The proof of loitering on the sidewalk and obstructing the same established facts which in no wise indicated that Salyer was a vagrant.

We do not mean to say that the Council of the City of Huntington is devoid of power to adopt an ordinance prohibiting loitering on its streets when connected with acts or conduct which may be characterized as criminal, nor do we mean to say that such council is without power to adopt an ordinance prohibiting the obstruction of side-

walks. But our conclusion is that in this case Salyer was charged with vagrancy. He was tried in the police court of the City of Huntington, as well as the Common Pleas Court, for the crime of loitering, thus obstructing the sidewalk, and all the evidence introduced tended to establish such loitering and obstruction, but in no wise showed that Salyer was guilty of the common law crime of vagrancy.

It is not amiss to comment upon the admission of testimony showing that other persons along with Salyer had been guilty of similar acts of loitering and obstructing the sidewalks. Such evidence, in the absence of a showing of concerted action by Salyer and other persons, who should be named, was prejudicial to the defendant and should not have been admitted.

In accordance with the foregoing, the judgments of the Circuit and Common Pleas Courts of Cabell County are reversed, the verdict of the jury is set aside, and this case is dismissed.

*Judgment reversed;*
*verdict set aside;*
*case dismissed.*