STATE OF WEST VIRGINIA

*ex rel.* J. FRED PLYMALE, *et al.*

*v.*

CITY OF HUNTINGTON, A MUNICIPAL CORPORATION,

GEORGE L. GARNER, *etc., et al.*

(No. 12231)

Submitted April 23, 1963.          Decided June 4, 1963.

*J. Floyd Harrison,* for relators.

*Maxwell W. Flesher,* City Attorney, for respondents.

CAPLAN, JUDGE:

· This is an original proceeding in mandamus wherein the relators, J. Fred Plymale, Boyd Markin, Ralph W. Peters and Clarence Duvall, citizens and qualified voters of the City of Huntington, seek to compel the respondents, the City of Huntington, a municipal corporation, George L. Garner, Budd L. Moser, John J. Durkin, A. E. Harris, John B. Meek, Elmer Brammer and Harry S. Damron, councilmen, and Florence Williams, city clerk, to submit to the voters of the City of Huntington the question of the adoption or rejection of two ordinances proposed by initiative under the provisions of Article XIII, Sections 113 and 116, of the Charter of the City of Huntington.

On June 25, 1962, the Council of the City of Huntington, proceeding under the provisions of Code, 8-4-20, as amended, adopted two ordinances, one providing for the assessment and collection of a fee for refuse removal and the other providing for a fee for fire protection. These fees, to become effective on July 1, 1962, were calculated to raise additional revenue in the amount of approximately $543,000.00, and the revenue anticipated therefrom was placed in the budgets of the city for the fiscal years beginning July 1, 1962 and July 1, 1963. These anticipated revenues, and appropriations based thereon, were ratified and approved by the State Tax Commissioner.

Pursuant to the provisions of said ordinances, fees for refuse removal service are currently being collected and

plans are being made for the collection of the fire service fees.

On July 7, 1962, two petitions were filed with the city clerk, the first protesting the adoption of the fire service fee and the second protesting the adoption of the refuse removal fee. These petitions were filed within fifteen days after the publication of the ordinances and obviously were intended to require a referendum under the provisions of Code, 8-4-20, as amended. It was subsequently determined by the clerk, and so reported to council, that less than thirty per cent of the registered voters of the city had signed the protesting petitions. As a result, the clerk, by certificate, declared the petitions to be insufficient. The council received the report of the clerk and declared that the provisions of the statute calling for a referendum were not complied with and that the said fee ordinances were in full force and effect. No challenge of council's action upon these protesting petitions was made, nor was there any appeal of any kind from such action.

Subsequently, on January 22, 1963, proceeding under the provisions of Article XIII of the Charter of the City of Huntington, petitions bearing the signatures of 8,400 allegedly qualified voters were filed with the city clerk by a committee of circulators, comprised of Homer L. Harris, T. E. Miller, Homer G. Heck, Owen R. Campbell and Boyd Markin. These petitions contained the full text of the proposed initiated ordinance, the effect of which would repeal the refuse removal fee ordinance, and requested its enactment by the city council or its submission to the qualified voters at an election for ratification or rejection. It is admitted that the number of signatures in these petitions constitutes more than ten per cent of the registered voters of the City of Huntington. On February 11, 1963, like petitions containing the same number of signatures were presented to the city clerk, proposing an ordinance repealing the fire service fee ordinance and also requesting its enactment by the city council, or its submission to the qualified voters at an election for ratification or rejection. On the same date, February 11, 1963, the city council, by resolution, declared the

petitions filed under the provisions of Article XIII, Section 113 of the charter, null and void, and took no further action in relation thereto. As a result of this action by the council, these petitioners seek this writ of mandamus.

On April 1, 1963, a rule was awarded by this Court returnable April 23, 1963. The respondents filed their demurrer and answer to the petition and the case was heard upon said pleadings and upon the briefs and arguments of counsel.

The City of Huntington operates as a home rule city, having adopted a charter under the provisions of Chapter 8A of the 1931 Code, as amended. The basic question presented in this proceeding is whether these fee ordinances, after being enacted and put into effect by the city council under the provisions of Code, 8-4-20, as amended, can be repealed by invoking the initiative power contained in Article XIII, Section 113, of the Charter of the City of Huntington. It is the contention of the relators that such initiative powers can be used to effect the repeal of the fee ordinances. On the other hand, the respondents take the position that any action to prevent these fee ordinances from becoming effective must be taken in accordance with the provisions of Code, 8-4-20, as amended, and, since the time to act thereunder has expired, the relators can not prevail. It becomes pertinent to the proper consideration of this case, therefore, to examine the statutory provision under which these ordinances were enacted and, further, to examine the pertinent provisions of the city charter.

The material portions of Code, 8-4-20, as amended, read as follows: "The governing authority of every municipal corporation that furnishes any essential or special municipal service, including police and fire protection, parking facilities on the streets or otherwise, recreational facilities, street cleaning, street lighting, sewerage and sewage disposal, and the collection and disposal of garbage, ashes or other waste materials, may by ordinance provide for the continuance, maintenance, installation or improvement of such service, may make reasonable regulations with respect thereto, may impose upon the users of such service reasonable rates, fees and charges to be collected in the same manner as municipal

taxes are collected or in some other manner specified in the ordinance, and may provide penalties for any violation of such ordinance. The municipal corporation shall not, however, have a lien on any property as security for payments due under such ordinance: Provided, however, that any ordinance enacted under the provisions of this section shall be published at least once a week for two successive weeks in two newspapers published in such municipality, or if there be only one newspaper published therein then in that newspaper, or if there be no such newspaper published then by posting copies of such ordinance for a like period in at least ten conspicuous places in such municipality, and in the event thirty per cent of the registered voters by written petition duly signed by them and filed with the municipal authority within fifteen days after the expiration of such publishing or posting protest against such ordinance, the ordinance shall not become effective until it shall be ratified by a majority of the votes cast by the duly qualified voters of such municipality at an election duly and regularly held as provided by the laws and ordinances of the municipality and the result of such election ascertained and declared. Such election shall be held after notice of such submission shall be given by publication or posting of the same for two successive weeks next prior to the date of such election as above provided for the publication of the ordinance when adopted. The powers hereby given to such municipalities and to the authorities thereof are in addition to and supplemental of the powers named in the respective charters thereof: * * *."

The power of initiative is reserved to the people by the charter in the following language: "Sec. 113. Power of Initiative. The qualified electors shall have power to propose any ordinance, except an ordinance appropriating money or authorizing the levy of taxes, and to adopt or reject the same at the polls, such power being known as the initiative. Any initiated ordinance may be submitted to council by a petition signed by qualified electors of the city equal in number to at least ten per centum of the registered voters at the last general municipal election."

In accordance with the great weight of authority, Code, 8-4-20, as amended, is a general law in that it operates uniformly upon and is applicable to, without exception, all cities in the State. As stated in 50 Am. Jur. 19, Statutes, Section 6, "A law is a general one where it relates to persons, entities, or things of a class, or operates equally or alike upon all of a class, omitting no person, entity, or thing belonging to the class." In holding a statute applying to sheriffs of all counties to be general law, our Court, in *McEldowney* v. *Wyatt*, 44 W. Va. 711, 30 S. E. 239, 45 L.R.A. 609, said: "This act operates uniformly on all persons and things of a class." See also *Carnegie Natural Gas Co.* v. *Swiger*, 72 W. Va. 557, 79 S. E. 3, 46 L.R.A. (N.S.) 1073; *Borough of Verona* v. *Civil Service Commission*, 135 N.J.L. 539, 53 A. 2d 360; 2 McQuillin, Municipal Corporations 77, Section 4.46.

In addition to the foregoing, the clear language of Code, 8-4-20, as amended, renders obvious the intention of the legislature to confer upon such statute the status of general law. It applies to the "governing authority of every municipal corporation", and provides that the "powers hereby given to such municipalities and to the authorities thereof are in addition to and supplemental of the powers named in the respective charters thereof." We hold, therefore, that the above quoted statute is general law and is available to every city in the State, whether it operates under the provisions of Chapter 8 of the Code or as a home rule city under Chapter 8A.

The specific issue now comes into focus. When an ordinance is enacted by the council of a home rule city, pursuant to a general law, and such law provides a manner in which the action of the council can be tested and, in fact, repealed, can such test be made under the provisions of a home rule city charter which differ from those set out in the general law? The City of Huntington adopted a home rule charter under the authorization of Article VI, Section 39 (a) of the Constitution of West Virginia. This is a permissive authority of local self government, but does not mean that the city has become an independent sovereignty. That the State remains supreme, insofar as its general laws are con-

cerned, is evidenced by the proviso contained in the above mentioned home rule amendment to our Constitution. That proviso is couched in the following language: "Provided, that any such charter or amendment thereto, and any such law or ordinance so adopted, shall be invalid and void if inconsistent or in conflict with this Constitution or the general laws of the State then in effect, or thereafter, from time to time enacted."

"Municipalities have no inherent power with regard to the exercise of the functions of their government. Such power depends solely upon grants of power by Acts of the Legislature, and the Legislature may at any time modify, change or withdraw any power so granted by general law in conformance with the provisions of the Constitution, Article VI, Section 39 (a) ." Point 2, Syllabus, *State ex rel. Alexander v. The County Court of Kanawha County, et al.*, 147 W. Va. 693, 130 S. E. 2d 200. This syllabus point reflects the general rule, and is applicable to home rule cities as well as to those operating under Chapter 8 of the Code.

It is noted that Code, 8-4-20, as amended, which provides for the fee ordinances involved herein, also provides a manner in which the action of council can be challenged. If within fifteen days after the expiration of the required publication thirty per cent of the registered voters, by written petition, protest against the ordinance, it shall not become effective until ratified by a majority of the votes cast by the duly qualified voters of the municipality. This is a general law which specifically provides the manner in which the voters can, in effect, repeal an ordinance enacted by the council. No other manner of challenging the action of council is contained in that general law, and no other manner is available to the voters for that purpose. As heretofore stated, it is contended by the relators that the voters can proceed by initiative under the charter. The charter provision, under which relators claim, provides that any initiative ordinance may be submitted to council by a petition signed by qualified electors of the city equal in number to at least ten per centum of the registered voters. It is clear that it would be less difficult to challenge the action of the city

council under the charter than under the general law. Therefore, there is an obvious inconsistency, if not conflict, between the pertinent charter provision and the general law. It is clearly the weight of authority, and it is expressly provided in our Constitution, that in the event of an inconsistency or conflict between a charter provision and a general law, the latter will prevail. *Brackman's* v. *City of Huntington,* 126 W. Va. 21, 27 S. E. 2d 71; *City of Huntington* v. *Salyer,* 135 W. Va. 397, 63 S. E. 2d 575; *Repass* v. *Town of Richlands,* 163 Va. 112, 178 S. E. 3; *City of Grand Haven* v. *Grocers' Co-operative Dairy Co.,* 330 Mich. 694, 48 N. W. 2d 362; *Neil House Hotel* v. *City of Columbus,* 144 Ohio St. 248, 58 N. E. 2d 665; *Association of Milk Dealers* v. *City of New York,* 11 App. Div. 2d 321, 204 N.Y.S. 2d 621; 5 McQuillin, Municipal Corporations 96, Section 15.20. Therefore, since the general law, Code, 8-4-20, as amended, provides an exclusive remedy to prevent an ordinance from becoming effective, resort to that remedy alone must be had. In other words, the referendum contained in Code, 8-4-20, as amended, provides the only manner in which the action of council can be challenged.

The city council derived its authority to enact these fee ordinances from, and only from, Code, 8-4-20, as amended. In permitting this type of fee ordinance it is reasonable that the legislature anticipated uniformity in the manner of its enactment and in the manner in which the people could prevent it from becoming effective. The legislature therein provided for the enactment of these fee ordinances, and further provided a method whereby the voters could prevent such ordinances from becoming effective. However, if the voters did not succeed in challenging the action of council under the referendum provisions of that general law, it is clear that no manner was provided therein for the repeal of such ordinances after their effective date. The fees to be collected under these ordinances, though not taxes, are nonetheless a part of the revenues upon which the city bases its fiscal affairs. The legislature obviously intended to give the voters an opportunity to defeat the action of council by means of a referendum, but did not intend to provide a means to repeal the action of council after the fee ordinances

became effective and the anticipated revenues therefrom were included in its budget and, in fact, approved by the State Tax Commissioner. To permit the repeal of a revenue measure so adopted and made effective would invite a state of chaos, insofar as the fiscal affairs of a municipality are concerned.

As pointed out by the relators, this Court has held that where a charter provides for the proposal of any ordinance by initiative, such proposed ordinance may act to repeal a former ordinance adopted by the council. *Bachmann* v. *Goodwin,* 121 W. Va. 303, 3 S. E. 2d 532; *State ex rel. Gabbert* v. *MacQueen,* 82 W. Va. 44, 95 S. E. 666. While these cases do stand for that proposition, they are not applicable to the case now under consideration; nor does *State ex rel. Schreyer* v. *City of Wheeling,* 146 W. Va. 467, 120 S. E. 2d 389, apply here.

In those cases the ordinances sought to be repealed were adopted by the respective city councils pursuant to the general powers granted by their charters. They were not enacted under the authorization of a general law, as was the situation in this case. In those cases there was no limitation by general law as to the manner in which such ordinances may be repealed. In the instant case a limitation does exist. In Code, 8-4-20, as amended, the manner of challenging these fee ordinances is specifically provided and resort may not be had to a method prescribed by charter if such charter provision is in conflict with or circumscribes that general law.

For the reasons stated herein, the rule heretofore awarded is discharged and the writ prayed for is denied.

*Writ denied.*