STATE *ex rel.* CHARLES W. MACQUEEN, *et al.*

*v.*

THE CITY OF DUNBAR, *etc., et al.*

(No. 15175)

*and*

OAKVIEW ESTATES, INC.

*v.*

THE CITY OF DUNBAR, *etc., et al.*

(No. 14882)

Decided June 2, 1981.

*William W. Pepper* for relators and appellants.

*Duttine, Thomas, Covert, King & Riffee, and Carl Duttine,* for respondents and appellees.

NEELY, JUSTICE:

In these consolidated zoning cases a group of voters and residents of Dunbar, West Virginia, are asking us to determine whether they are entitled to a referendum on an amendment to a zoning ordinance. We find that under the statutory provisions covering amendments to zoning ordinances set out in *W. Va. Code,* 8-24-18 [1969] through 8-24-22 [1969] there is no authorization for a public referendum.

The appellants seek to submit to the qualified voters of Dunbar, West Virginia, at the next regular primary, general or special election the question whether "the area located on the east side of Westmoreland Drive, north of I-64 designated as parcels 249, 250, 257, 258, 259 upon tax parcel map 9, contained in the office of the Assessor of Kanawha County, West Virginia" should be zoned "R-1 Single Family Residential" or "B-2 Central Business." Since 7 June 1961, when the City of Dunbar adopted its initial zoning ordinance, the subject tract of land has been zoned as "R-1 Single Family Residential."

On 12 June 1979, the appellee/respondent corporation (Oakview) was conveyed property in the City. The City, acting by and through its City Council, amended the Zoning Ordinance on 6 August 1979 to rezone the subject parcel of land from "R-1 Single Family Residential to B-2 Central Business as restricted." On 20 August 1979, appellants/petitioners appeared before the City Council of Dunbar and pursuant to *W.Va. Code,* 8-24-48 [1969] sought to have a referendum on whether to rezone the property. The petition contained the signatures of 134 individuals and a map of the area.

Shortly thereafter, Oakview filed a complaint in the Circuit Court of Kanawha County seeking to have the petition declared null and void and to enjoin the City from holding the election sought by the petitioners. The sole named defendant was the City of Dunbar and in its answer

to the complaint, the City Attorney took a "neutral position" and committed the determination of the question to the courts. The appellants then filed a motion to intervene seeking leave for them to become parties defendant in the circuit court action. Appellants argued that the zoning classification "B-2 Central Business, as restricted" was unlawful as not being within the City Charter of Dunbar or that, alternatively, a referendum was required.

On 18 February 1980 Oakview Estates was granted a motion for summary judgment and the City of Dunbar was enjoined from holding the election which was sought by the appellants. The appellants appealed the granting of the motion for summary judgment to our Court, and arguments were presented, and the case was submitted for decision on 24 February 1981. That case styled *Oakview Estates, Incorporated v. The City of Dunbar, a Municipal Corporation and Charles W. MacQueen, et al., Intervenors* was then consolidated with the more recent petition for a writ of mandamus brought by Charles W. MacQueen and John D. Wilshere. After the appeal to our Court on the summary judgment determination Oakview initiated new action to rezone the subject property. Under the new proposal the property is rezoned from R-1 Single Family Residential to B-2 Central Business. The language "as restricted" was deleted. The new proposal to rezone the property to B-2 proceeded through the Planning Commission and the public meetings. Large numbers of residents appeared and voiced objections to the proposal but the City Council of Dunbar passed an ordinance rezoning the property again, this time simply to "B-2." Within sixty days after the enactment of the zoning ordinance the appellants appeared before the respondent City Council and presented to Council, its Clerk, and its Mayor, another petition for a referendum.

This new petition is signed by 875 individuals who represent that they are qualified voters residing in the City of Dunbar who feel that the proposed zoning change from R-1 to B-2 should be voted upon in a city-wide election. According to the certification of the Kanawha County Clerk

there were 4,112 votes cast for the office of Governor within the City of Dunbar in the last election. Thus under *W. Va. Code,* 8-24-48 [1969] there are sufficient signatures to have a referendum upon the adoption of the zoning ordinance if such referendum is either permitted or required.

The City of Dunbar has issued building permits and certificates of occupancy for two office buildings now located on the subject property and the City has compelled Oakview to impress restrictive covenants on the subject property. Oakview has made extensive excavations and improvements pursuant to those permits and licenses, and it has dedicated public ways and easements across its properties in conjunction with the City.

While the citizens go to great lengths to argue that under *W. Va. Code,* 8-24-48 [1969] the adoption of an amendatory zoning ordinance is subject to referendum by the qualified voters residing in the area affected, we find that the procedure for adoption of all amendments to a comprehensive plan or ordinance is clearly set forth in *W.Va. Code,* 8-24-23 [1969] which says that "after the adoption of a comprehensive plan and ordinance, all amendments to it shall be adopted according to the procedures set forth in §§ 18 through 22 of this article, . . ." Under *Code,* 8-24-18 through 22 [1969] there is no provision for a public referendum and the involvement of the public is limited to public hearings at which objections to the adoption of the plan may be voiced. These public hearings were held in the rezoning under consideration in these cases according to this procedure and thus we find that the lower court determination of summary judgment must be upheld and that the writ of mandamus sought by the petitioners to require a public referendum must be denied.

The citizens (who are both appellants from the summary judgment and petitioners in mandamus) present many arguments suggesting that *W. Va. Code,* 8-24-48 [1969] applies to amendments and requires a referendum; however, *Code,* 8-24-48 [1969] is clearly limited to the *adoption* of an initial zoning ordinance by the governing body of a municipality and not to amendatory zoning ordinances. The citizens present lengthy arguments about

whether this particular change is administrative or legislative in nature; however, we find no need to address those issues because our reading of the statutory provisions on amendments to a zoning ordinance set out a specific procedure which obviates the need for further analysis.

We note that in reaching the determination that an amendment of a zoning ordinance is not subject to a referendum we are supported by the authorities. In general, a distinction has been drawn between a comprehensive zoning ordinance and an amendment of the zoning ordinance, the former being subject to referendum and the latter not.

> "[S]ome states provide for legislation through referendum. The question arises as to the propriety of enacting zoning ordinances or amendments thereto by such means. The general rule is that such referendum provisions apply only to the question whether a comprehensive zoning ordinance should be enacted, i.e., whether the legislative body is to be permitted to zone the community at all and has no reference to the detailed manner in which it is to be zoned nor to the modifications or amendments thereof." 1 Rathkopf, Law of Zoning and Planning, Chapter 27, § 3 page 31, quoted in *West v. Portage*, 392 Mich. 458, 221 N.W.2d 303 (1974).

Today's holding, however, is not to imply that citizens are entirely without remedy when arbitrary or unreasonable rezoning is voted by a city council. We must remember that the amendment to a zoning ordinance, like the original comprehensive plan, must be drawn within the limits of the zoning power delegated by the Enabling Act; it must either conform to the comprehensive plan already in existence or, in combination with the former plan, constitute a new comprehensive plan; and, it must be in accordance with the criteria by which the reasonableness of any zoning ordinance is judged. In that regard we look to the statement of the Illinois Court in *Trust Company v. City of Chicago*, 408 Ill. 91, 96 N.E.2d 499, 504 (1951) in which the court established the right of the municipality to amend a

zoning ordinance and the circumstances under which such power should be exercised when they said:

> "The validity of an amendatory zoning ordinance, with respect to the exercise of the police power, must be determined by the same rules and tests as those applied in ascertaining the validity of original zoning ordinance; and where the amendment of a zoning ordinance is clearly an arbitrary and unreasonable action on the part of the City Council, ostensibly taken to promote the public health, safety, comfort, morals or welfare, but having no substantial relation to any of those objects, such amendment is of no force and effect. . . . The power of a City Council is not unfettered and can be exercised only when the public good demands or requires that the amendment be made. It cannot be exercised merely because certain individuals want it done or think it ought to be done. An amendatory zoning ordinance cannot be sustained if the evidence fails to show that it was passed for the public good, but instead tends to show that it was passed in deference to the wishes of certain individuals."

In the case before us we find that the decision of the lower court in *Oakview Estates Incorporated v. The City of Dunbar* must be affirmed and that the writ of mandamus in *State of W. Va. ex rel. Charles W. MacQueen, John D. Wilshere, Sr. et al. v. The City of Dunbar, etc.* must be denied.

*No. 14882: Affirmed.*
*No. 15175: Writ denied.*