317 S.E.2d 167

**LOCAL 598, COUNCIL 58 AMERICAN FEDERATION, etc.**

v.

**CITY OF HUNTINGTON, W.Va.**

**No. 16044.**

Supreme Court of Appeals of West Virginia.

June 13, 1984.

James M. Haviland, McIntyre, Haviland & Jordan, Charleston, W.Va. for appellant.

Michael Holland, International Union, U.M.W.A., Washington, D.C., Jacqueline A. Kinnaman, W.V.E.A., Charleston, W.Va., amicus curiae.

R. Lee Booten, II, Asst. City Atty., Huntington, W.Va. for appellee.

NEELY, Justice:

This case presents the narrow question of whether a West Virginia municipality is empowered to enter into a binding collective bargaining agreement with a union. Petitioner represents the sanitation workers of Huntington who claim that their contract with the City of Huntington has been breached and asks this Court to hold the contract enforceable. Respondent, the City of Huntington, argues that municipalities lack the power to enter into binding agreements with labor unions. Both sides agree that the issue is a purely legal one. The Circuit Court of Cabell County accepted respondent's position and granted summary judgment to respondent in an order entered on 17 August 1983. We reverse and hold that this contract is legally binding.

I

The petitioner acted as bargaining agent for about three hundred sanitation workers employed by the City of Huntington. On 25 February 1982, petitioner and the City of Huntington entered into an "Employment Agreement" that was embodied in a seventeen page written document. That detailed agreement was to be controlling for a period of one year from 1 July 1982 to 30 June 1983 and provided, among other things, for the length of the work week, holiday and vacation policy, a seniority system, a grievance procedure and union activ-

ity rights. It concluded with a "no-strike, no-lockout" agreement. Obviously, the agreement also included wages.

The provision that has become the bone of contention is a parity clause that provides that sanitation workers be paid at the same level as two other bargaining units, the police and fire departments. When the police were given a raise, the sanitation workers demanded an equivalent pay raise pursuant to the contract. The city's refusal to grant that raise and its claim that the collective bargaining agreement was not legally binding, led to the suit that is the subject of this appeal.

## II

*West Virginia Code* 8–12–1 [1969] provides that:

> [E]very municipality shall have plenary power and authority: ...
>
> (2) to contract and be contracted with;

Petitioner relies on this general grant of authority for the proposition that municipalities can enter into collective bargaining agreements. Respondent argues that this general grant of authority is not sufficient and that the legislature's continued unwillingness to adopt a proposal allowing collective bargaining agreements specifically indicates that the legislature did not intend to allow such a practice to develop.

■ We find petitioner's position more convincing. The failure of the legislature to enact a particular law is not evidence that the legislature rejected the policy underlying that bill. Legislatures are purposely designed to make the passage of any law difficult.[1] Although we do not and cannot imply that acts not undertaken by the legislature were intended, we also cannot assume that the failure to get a particular bill through the elaborate committee structures of a bicameral legislature indicates that there is not public support for that action.

■ Secondly, we note that the "home rule" provision of the *W.Va.Code* 8–12–2

[1969] provides that municipalities have the power necessary to transact the city's business and to incur obligations on behalf of cities. The provision of sanitation services is a necessary function of city government. If municipal officials believe that they can most cheaply and efficiently provide those services by entering voluntarily into a single collective bargaining agreement, that judgment is within the scope of their authority.

We note that other jurisdictions have reached a similar conclusion. In *Dayton Teachers Association v. Board of Education*, 41 Ohio St.2d 127, 323 N.E.2d 714, the Ohio court was faced with a similar question involving a county's decision to bargain with teachers through a union representative. That court stated:

> Neither reason nor authority prohibits a board of education from manifesting its public decisions in written form and calling the writing an agreement or contract. It cannot be seriously argued that entering into such agreement is a departure from, or surrender of, independent exercise of a Board's policymaking power.

*Id.* 323 N.E.2d at 717.

■ We are not persuaded by the opinion of our Attorney General of 23 February 1966. That opinion stated that while public employees had the right to join union organizations, "The final determination of wages, hours, working conditions and the like, rests with the particular governmental unit and cannot be delegated away." We do not believe that entering into a collective bargaining agreement constitutes an improper delegation of authority. Certainly Huntington had the right to enter into individualized contracts with sanitation workers. If municipal authorities believed it would be more efficient to enter into a general agreement, we do not believe that barring that alternative approach serves any compelling public policy.

1. For a detailed explanation of this phenomenon, *see,* R. Neely, *How Courts Govern America,* Chapter III, Yale University Press, 1981.

For a period of more than ten years, the City of Huntington has engaged in collective bargaining agreements with major municipal unions. It is apparently the City's considered judgment that contracting for necessary municipal services in this way has, on balance, been prudent. Because the city has reaped the benefits of this efficient approach, it cannot now be heard to say it will not suffer the consequences of agreements that have been seen as binding by the other party.

Therefore, for the reasons given above, we reverse the decision of the circuit court and hold that the agreement is binding and enforceable.

Reversed.